[Cite as *Rastaturin v. Ohio State Veterinary Med. Ctr.*, 2023-Ohio-3262.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| ALEXEY RASTATURIN | Case No. 2023-00273AD |
| Plaintiff | Deputy Clerk Holly True Shaver |
| v. | <u>MEMORANDUM DECISION</u> |
| OHIO STATE VETERINARY MEDICAL CENTER | |
| Defendant | |

{¶1}   Alexey Rastaturin ("plaintiff") filed this claim against defendant, the Ohio State Veterinary Medical Center ("OSUVMC").  Plaintiff asserted that on April 19, 2022, defendant charged his bank account $1,991.68 without his consent for services that he did not approve.

{¶2}   Defendant filed an investigation report denying that the charge was incurred without plaintiff's informed consent.  Defendant stated that plaintiff took his cat ("Ash") to its Dublin location for concerns about Ash's weight loss, lack of appetite, and respiratory issues.  OSUVMC also stated that Ash had lumps and swelling on various parts of her body.  After its initial assessment, defendant stated that its employee explained to plaintiff that Ash needed to be transported to its Internal Medicine Service for further diagnosis. Defendant asserted that plaintiff signed an informed consent estimate (Estimate #170927), which included Ash's initial hospitalization, a diagnostic workup, and stabilization measures, for between $2,000.00 and $3,000.00.  OSUVMC stated that plaintiff paid the deposit of $2,225.00 and the bill for the services ($863.51) at the Dublin location on April 15, 2022.  OSUVMC stated that one of the doctors treating Ash discussed the recommended course of treatment with plaintiff on April 18, 2022, and plaintiff agreed to the treatment.  Further, defendant asserted that an additional estimate (Estimate #170985) was sent to plaintiff for between $1,710.50 and $2,021.25, which was in addition to Estimate #170927.  Defendant asserted that plaintiff did not express any unwillingness to proceed with the treatment plan.  Defendant asserted that plaintiff paid

$1,991.38 on April 19, 2022, when Ash was discharged; this payment was taken over the phone, which required plaintiff to read his credit card number to one of OSUVMC's employees. Defendant stated that on May 26, 2022, plaintiff paid the remaining charges and has no outstanding balance. Plaintiff did not express any concerns about this bill until May 31, 2022, after Ash was euthanized. Defendant concluded that none of the charged fees plaintiff paid to OSUVMC were without plaintiff's consent. Therefore, judgment should be entered in favor of defendant. Defendant attached several documents in support of its investigation report including Ash's medical records, estimates for Ash's treatment, an affidavit of Ash's treating veterinarian, an email between that veterinarian and plaintiff, the April 19, 2022 receipt, an affidavit of the OSUVMC employee who took plaintiff's credit card information for the April 19, 2022 transaction, and invoices for the treatment provided.

{¶3} Plaintiff submitted a response to defendant's investigation report reasserting his claim. Plaintiff stated that he did not provide explicit approval for any of the credit card charges or the additional services beyond the initial deposit. Plaintiff asserted the fact that he provided his credit card information over the phone does not mean that he consented to any additional charges. Plaintiff alleged that this conduct was a violation of the federal Electronic Fund Transfer Act, Regulation E 12 CFR sec. 1005 ("EFTA") and R.C. 1345.01 et seq.

{¶4} Plaintiff's claim sounds in contract law. In order to prevail on a claim for breach of contract, plaintiff must "establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages of loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41.

{¶5} OSUVMC does not dispute that it had a contractual relationship with plaintiff to perform veterinary services on Ash. The terms of the contract were set out in the conversations between OSUVMC's employees and plaintiff. Plaintiff contended that he did not consent to the April 19, 2022 charge to his credit card or the services performed. However, plaintiff did not provide any evidence, outside of his statements, of this. On the other hand, OSUVMC provided an affidavit of Dr. Hannan Klein who averred that she called plaintiff on April 18, 2022, to discuss further treatment. Dr. Klein also stated in her

affidavit that another OSUVMC employee sent plaintiff an itemized estimate for the treatment and that plaintiff verbally agreed to the course of treatment and estimate. Based on this evidence, the terms of the contract between plaintiff and OSUVMC were that OSUVMC would provide further treatment to Ash and plaintiff would pay for this treatment. Therefore, plaintiff has failed to prove, by a preponderance of the evidence, that OSUVMC breached the contract when it charged plaintiff for the treatment on April 19, 2022.

{¶6} Assuming *arguendo* that plaintiff has asserted defendant violated the Ohio Consumer Sales Practices Act ("CSPA") under R.C. 1345 et seq, this court does not have jurisdiction. The CSPA was enacted to provide remedies to enforce prohibition of deceptive and unconscionable acts and practices by "suppliers" in connection with consumer transactions. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 548 N.E.2d 933 (1990). A "supplier" is defined in R.C. 1345.01 (C), in part, as "a person engaged in the business of effecting or soliciting consumer transactions." R.C. 1345.01(B) includes "government, governmental subdivision or agency" in the definition of person.

{¶7} R.C. 1345.04 states:

> The courts of common pleas, and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code, or with respect to any claim arising from a consumer transaction subject to such sections.

{¶8} R.C. 2743.02(A)(1) provides in part:

> The state hereby waives its immunity from liability * * * and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties * * *. To the extent that the state has previously consented to be sued, this chapter has no applicability.

{¶9} Therefore, if by some other prior statutory provision, the state has consented to be sued, the Court of Claims is without jurisdiction. The state consented to

be sued when the legislature enacted R.C. 1345, the CSPA, in 1972. The Court of Claims statute was enacted in 1975. Therefore, based on the language of R.C. 2743.02(A)(1), this court lacks jurisdiction to determine claims under the CSPA.

{¶10} Therefore, plaintiff's claim must fail.

| | |
|---|---|
| ALEXEY RASTATURIN | Case No. 2023-00273AD |
| Plaintiff | Deputy Clerk Holly True Shaver |
| v. | ENTRY OF ADMINISTRATIVE DETERMINATION |
| OHIO STATE VETERINARY MEDICAL CENTER | |
| Defendant | |

{¶11} Having considered all the evidence in the claim file, and for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff.

HOLLY TRUE SHAVER
Deputy Clerk

Filed 8/11/23
Sent to S.C. Reporter 9/14/23